UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUNDANCE, INC. and
MERLOT TARPAULIN AND
SIDEKIT MANUFACTURING CO., INC.,

    Plaintiffs,

vs.                                                  Case No. 02-73543

DEMONTE FABRICATING LTD. and          HON. AVERN COHN
QUICK DRAW TARPAULIN SYSTEMS, INC.,

    Defendants.
_____/

# MEMORANDUM AND ORDER GRANTING PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL

I. Introduction

This is a patent case tried to a jury. Plaintiffs Sundance, Inc. and Merlot Tarpaulin and Sidekit Manufacturing Company, Inc. (collectively, Sundance), holder of U.S. Patent No. 5,026,109 (the '109 patent) covering a Segmented Cover System, sued DeMonte Fabricating, Ltd. and Quick Draw Tarpaulin Systems Inc. (collectively, DeMonte) for infringement of the '109 patent.

The case was tried to a jury. The jury found the patent invalid and infringed. See verdict form attached as Exhibit A.

Before the Court is Sundance's motion for judgment as a matter of law, or in the alternative, for a new trial on the finding of validity. For the reasons that follow, the motion for judgment as a matter of law will be granted.

II.  Background

The patent has been described in the Court's Decision on Claim Construction, some of which is repeated here.

The ABSTRACT describes the invention:

The present invention provides a segmented cover system utilizing a series of cover sections, which can be of any size and shape, and a series of curved or straight supporting bows to form a cover assembly which allows for the easy replacement of a cover section or a bow without disassembling the entire cover system.  The present cover assembly preferably utilizes a series of standard cover sections which are detachably secured to the two adjacent supporting bows.  Preferably, the supporting bows are curved and consist of a bow center section and two easily removable bow end sections.  The unique design, construction and interaction of the cover sections, the bow center sections and the bow ends enable damaged cover sections and bows to easily be removed and replaced without disassembling or removing the cover system from its location.  A drive assembly can be used to extend and retract the segmented cover system of the present invention.

The BACKGROUND OF THE INVENTION describes the advance in the art as follows:

> The need for a reliable covering system and particularly a retractable covering system for truck and trailer bodies has long been recognized where the cargo being carried is perishable, a hazardous material, or which could be dangerous to passing motorists such as stones, gravel, asphalt, shale, or any other material which can become a projectile. Moreover, many states are passing laws which mandate the use of covering systems on trucks and trailers. Retractable covering systems have the advantage that they can be operated easily and safely from the ground by one person. They also can be extended and retracted in very little time thereby improving overall efficiency and reducing driver fatigue.
>
> U.S. Pat. Nos. 4,801,171, 4,725,090 and 4,189,178 describe several different truck tarpaulin covering systems which allow a tarpaulin cover to be mechanically extended or retracted from the top portion of a truck trailer. While these retractable cover systems can accomplish their intended purpose once they are installed, they typically require a significant amount of time and effort to install, especially since they are not

easily installed by one person. Thus, they are not interchangeable.

Moreover, these systems have a serious drawback if the tarpaulin or its supports become damaged, either during normal operation or during covering and uncovering of the trailer body. It is very difficult to repair or replace these systems if they become damaged and therefore the entire truck can be out of operation for a long period of time until the cover system is completely repaired or replaced. This is because, to replace the cover or the supporting rods, the cables which enable the cover system to be retractable have to be disconnected from all of the supporting bows and these in turn must be disconnected individually from the entire tarp. If a spare tarp is not immediately available, the entire tarp must be sent out for repair even if the damaged area comprises only a small portion of the tarp. Additional delays can occur in repairing the tarp, itself. Even after the tarp is repaired, the whole cover system must be reassembled and reinstalled on the truck trailer, again requiring a significant amount of time and manual labor.

. . . .

Due to the frequency with which these tarpaulin covering systems become damaged it would be desirable to have a retractable cover system wherein only the damaged portion could easily be removed and replaced without replacing or disassembling the entire cover system. Similarly, such a cover system would be desirable in certain application, even if it were not retractable.

Claim 1 of the '109 patent is the paradigm claim and (broken down into

appropriate clauses) reads:

1. A retractable segmented cover system <u>used with a truck trailer</u> comprising

a plurality of flexible cover sections with a plurality of substantially parallel supporting <u>bows</u> spaced therebetween and a <u>drive assembly</u>,

wherein each cover section is detachably connected between substantially parallel supporting <u>bows</u>,

the <u>bows</u> are <u>slideably supported on the truck trailer</u> and at least one <u>bow</u> is <u>fixedly connected to the drive assembly</u> such that the cover system can be extended or retracted by the drive assembly

> and wherein a cover section can be removed from the cover system <u>independent</u> of the other cover sections.

### III. Legal Standards

Sundance moves for judgment as a matter of law under Fed. R. Civ. P. 50 and alternatively for a new trial under Fed. R. Civ. P. 59(e).

Fed. R. Civ. P. 50 provides the following standard for granting judgment as a matter of law:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). In addition, when a party makes a renewed motion after a verdict has been returned, the court may: "(A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law[.]" Fed. R. Civ. P. 50(b)(1). The inquiry for resolving a Rule 50 motion for judgment as a matter of law is the same as the inquiry for resolving a motion for summary judgment under Fed. R. Civ. P. 56. <u>White v. Burlington N. & Santa Fe Ry. Co.</u>, 364 F.3d 789, 794 (6th Cir. 2004) (en banc) (citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000)). That is, "[j]udgment as a matter of law is appropriate when 'viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party.' " <u>Tisdale v. Fed. Express Corp.</u>, 415 F.3d 516, 527 (6th Cir.2005) (internal quotation marks omitted). See also <u>Johnson Controls v. Jay Ind.</u>, __ F.3d __, 2006 WL 2380827 (6th Cir. Aug. 18, 2006).

By contrast, Rule 59(a) provides that new trial motions may be granted, in an action involving a trial by jury, "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Generally, this provision has been interpreted to mean that a district court should grant a motion for new trial only "when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." Holmes v. City of Massillon, Ohio, 78 F.3d 1041, 1045-46 (6th Cir. 1996). See also Mitchell v. Boelcke, 440 F.3d 300 (6th Cir. 2006). Sundance argues in the alternative that a new trial is warranted because the verdict is against the great weight of the evidence.

The factual determinations underpinning a jury's finding of non-obviousness are reviewed under the substantial evidence/reasonable juror standard. Richardson-Vicks, Inc. v. The Upjohn Co., 122 F.3d 1476, 1479 (Fed. Cir. 1997).

IV. Analysis

The parties agree that resolution of Sundance's motion depends on whether the invention was obvious.[1] A patent claim is invalid "if the differences between the subject

---

[1] The Court is aware of the extensive proceedings in the Patent Office regarding reexamination of the patent. Indeed, this action was initially stayed pending reexamination. At the time of trial, the Patent Office had found upon reexamination that the patent was valid, a point Sundance emphasizes in its paper to support a finding of validity. However, DeMonte requested a second reexamination which was granted. After the verdict, on or about July 28, 2006, the Patent Office issued an office action rejecting claim 1 as obvious in light of the prior art. The uncertainty generated by the Patent Office regarding the validity of the patent has not been lost on the Court. Moreover, proceedings in the Patent Office are far from over. With all due respect to the Patent Office, the Court is obligated to decide the issue before it. That is, whether

5

matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (2000). The ultimate issue of obviousness turns on four factual determinations: (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) objective indicia of nonobviousness. Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966).

As described above, Sundance's invention is directed to a retractable cover system on a truck trailer that has independently removable segmented flexible cover sections. The key being that the cover system is "segmented."

As to the scope of the prior art, it relates to retractable cover systems used with truck trailers. It is clear that prior to Sundance's invention, retractable tarp systems were in use on truck trailers as exemplified by Cramaro, U.S. Patent No. 4,189,178, Hannaway, U.S. Patent No. 1,263,759. Indeed, DeMonte's expert, Dan Bliss, testified that all of the elements of the claim with the exception of those related to the segmented cover are found in Hannaway and Cramaro. Hannaway disclosed a retractable tarp cover for a flatbed truck and Cramaro discloses a flat tarpaulin cover system for a dump box type truck trailer.

However, also introduced at trial was prior art outside of the truck environment which used segmented tarps. Specifically, Hall, U.S. Patent No. 3.415,260, which describes a segmented pool cover placed on the ground that is tensioned by an intricate

---

the jury's verdict on validity can stand in light of the evidence at trial as to obviousness.

6

system of cables which are joined to posts which slides without a drive assembly, was introduced as prior art.

As to the level of skill in the art, testimony at trial established that it would encompass "somebody with a high school education, maybe at least a year in working with covers and would also have to understand how mechanical objects work." In short, the level of skill is low.

As to the differences between the claimed invention and the prior art, Sundance says that in looking at only the prior art relating to truck covers, the difference between the prior art and the invention is the failure to have a segmented tarp. DeMonte says that the prior art, including non truck covers, contains all of the elements of the invention. Analysis of this factor hinges on whether it was obvious to combine the teachings of Hall, a segmented non truck cover, with that of Cramaro.

The case law establishes that prior art references cannot be selected, and selected elements from selected references cannot be combined, without some suggestion, motivation, or teaching that would make obvious that selection and that combination. See, e.g., Karsten Mfg. Corp. v. Cleveland Golf Co., 242 F.3d 1376, 1385 (Fed. Cir. 2001) ("In holding an invention obvious in view of a combination of references, there must be some suggestion, motivation, or teaching in the prior art that would have led a person of ordinary skill in the art to select the references and combine them in the way that would produce the claimed invention."); Brown & Williamson Tobacco Corp. v. Philip Morris Inc., 229 F.3d 1120, 1124-25 (Fed. Cir. 2000) ("a showing of a suggestion, teaching, or motivation to combine the prior art references is an 'essential component of an obviousness holding' ").

The Federal Circuit has held that if all the elements of an invention are found in a combination of prior art references:

> a proper analysis under § 103 requires, inter alia, consideration of two factors: (1) whether the prior art would have suggested to those of ordinary skill in the art that they should make the claimed composition or device, or carry out the claimed process; and (2) whether the prior art would also have revealed that in so making or carrying out, those of ordinary skill would have a reasonable expectation of success.

Velander v. Garner, 348 F.3d 1359, 1363 (Fed. Cir. 2003) (citing Graham v. John Deere Co., 383 U.S. 1, 17 (1966)).

The Federal Circuit has explained:

> The first requirement, the motivation to combine references, serves to prevent hindsight bias. See McGinley v. Franklin Sports, Inc., 262 F.3d 1339, 1351 (Fed. Cir. 2001) ("To prevent hindsight invalidation of patent claims, the law requires some 'teaching, suggestion or reason' to combine cited references.") (quoting Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573 (Fed. Cir. 1997)). In making obviousness determinations, the test is "whether the subject matter of the claimed inventions would have been obvious to one skilled in the art at the time the inventions were made, not what would be obvious to a judge after reading the patents in suit and hearing the testimony." Panduit Corp. v. Dennison Mfg. Co., 774 F.2d 1082, 1092 (Fed. Cir. 1985). Whether such a motivation has been demonstrated is a question of fact. See Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1348 (Fed. Cir. 2000). Evidence of a motivation to combine prior art references "may flow from the prior art references themselves, the knowledge of one of ordinary skill in the art, or, in some cases, from the nature of the problem to be solved." Brown & Williamson Tobacco Corp. v. Philip Morris Inc., 229 F.3d 1120, 1125 (Fed. Cir. 2000).

Medichem v. Rolabo, 437 F.3d 1157, 1164-65 (Fed. Cir. 2006).[2]

Here, Bliss testified that one skilled in the art would combine Hall and Cramaro,

---

[2] The Court is mindful that the Federal Circuit's framework for evaluating obviousness with the "teaching-suggestion-motivation" test is before the United States Supreme Court for review. See KSR International Co. v. Teleflex, Inc., 04-1350 (cert. granted June 26, 2006). The Court is applying the law on obviousness as it exists at this time.

as follows:

> Q: Okay. And so, sir, did you reach an opinion in this case as to obviousness?
> A: Yes, I did.
> Q: What is your opinion?
> A: My opinion is that Claim 1 is obvious in view of the combination of various references in the prior art.
> Q: And can you give the jury a specific example of those references?
> A: Yes, you could take the Hall reference and take the drive ample of Cramaro and combine the two together, that would be one example. Another example would be you could start with Cramaro and take a segmented system like in Hall and modify Cramaro to have a segmented cover that can be extended and contracted by drive assembly.

Bliss did not cite any references in either patent to support his conclusion. This evidence, the sole evidence presented to the jury regarding this issue, does not establish that one skilled in the art would have combined Hall and Cramaro, thereby rendering the invention obvious. As Sundance states in its paper:

> ...there is no suggestion in the art to combine Cramaro with Hall. To the contrary, thousands of drivers, i.e. those of ordinary skill in the art, had been driving around for over 70 years in trucks using the one-piece tarps with Hannaway and Cramaro type systems, and had not solved the problems of systems using one-piece tarps. Even Mr. DeMonte, when he sought to develop a truck cover system in the late 1980's, came up with a one-tarp system, despite his testimony that segmented systems in the non-truck art were well know[n]...

Put simply, there was not sufficient evidence for the jury to conclude that one skilled in the art would have combined Hall and Cramaro so as to arrive at the invention - a segmented tarp used for truck covers. This is especially true in light of the fact that the level of skill in the art is low and focuses on tarps used for truck covers. To find otherwise is hindsight, which is prohibited when considering obviousness.

The fourth factor, often referred to as secondary considerations which includes commercial success, unexpected results, copying, long-felt but unresolved need, and

9

the failure of others to develop the invention, also supports a finding of non-obviousness. As explained in Sundance's paper, it took seventy years to solve the problems with a one-tarp system for truck covers with the invention of the segmented tarp. "The existence of an enduring, unmet need is strong evidence that the invention is novel, not obvious, and not anticipated..." In re Maharkur Patent Litigation, 831 F. Supp. 1354, 1378 (N.D. Ill. 1993).

     Moreover, Mr. DeMonte testified that he had the idea for a one-tarp cover system in the late 1980's but because of problems with it, he switched to a segmented system, an idea he said came from Detroit Tarp in the early 1990's. Mr. DeMonte used Detroit Tarp to make the segmented tarp for him. Detroit Tarp, however, was a distributor for the patented system from 1989 to the present as sold by plaintiff Merlot Tarpaulin and Sidekit Manufacturing Co. Using Sundance's technology to achieve the results disclosed in the patent is objective evidence that the invention was not obvious. See Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1000 (Fed. Cir. 1986).

V.  Conclusion

For the reasons stated above, the jury's finding that the patent was invalid is not supported by the record.  Based on the evidence at trial, reasonable minds could not differ that the invention was not obvious and therefore the patent is valid.  The jury's contrary conclusion cannot stand.  Sundance's motion for judgment as a matter of law is GRANTED.

A status conference is set for **Tuesday, October 03, 2006 at 2:30 p.m.** to discuss further proceedings in this case.

SO ORDERED.

      s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  September 20, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, September 20, 2006, by electronic and/or ordinary mail.

      s/Julie Owens
Case Manager, (313) 234-5160