UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SUNDANCE, INC. and
MERLOT TARPAULIN AND
SIDEKIT MANUFACTURING CO., INC.,

      Plaintiffs,

vs.                                                                    Case No. 02-73543

DEMONTE FABRICATING LTD. and                    HON. AVERN COHN
QUICK DRAW TARPAULIN SYSTEMS, INC.,

      Defendants.
_____/

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING INFRINGEMENT

### I. Introduction

This is a patent case tried to a jury.  The plaintiffs, Sundance, Inc., Merlot

Tarpaulin and Sidekit Manufacturing Co., Inc. (collectively, Sundance) sued defendants

DeMonte Fabricating LTD and Quick Draw Tarpaulin Systems, Inc. (collectively,

DeMonte) for infringement of U.S. Patent No. 5,026,109 (the '109 patent).  In April 2006,

a jury that found the '109 patent invalid and infringed.  Sundance filed a motion for

judgment as a matter of law to set aside the jury's finding of invalidity which the Court

granted.[1]  Now before the Court is DeMonte's motion for judgment as a matter of law to

set aside the jury's finding of infringement. For the reasons that follow, the motion is

DENIED.  The jury's verdict stands.

_____

[1]See Sundance, Inc. v. Demonte Fabricating Ltd., 2006 WL 2708541 (E.D. Mich. Sept. 20, 2006).

## II.  The Pending Motion

The essence of DeMonte's motion is as follows:

The evidence at trial was not sufficient to support the jury's finding of infringement, because the accused device lacks all the components necessary to form a "drive assembly" as required by Claim 1 of the '109 patent.  DeMonte further argues that Sundance's failure to identify a drive assembly in the accused device makes it impossible to restructure the device such that it does not infringe the '109 patent.

Sundance responds that DeMonte waived the right to bring the motion because it did not move for judgment as a matter of law at the close of the case and that the jury's verdict is supported by the evidence.

## III.  Background

### A.  Relevant Portions of the Patent

The '109 patent is for a retractable, segmented covering system that has been adapted for practical and efficient use with truck trailers, it is described in the ABSTRACT as follows:

> The present invention provides a segmented cover system utilizing a series of cover sections, which can be of any size and shape, and a series of curved or straight supporting bows to form a cover assembly which allows for the easy replacement of a cover section or a bow without disassembling the entire cover system.  The present cover assembly preferably utilizes a series of standard cover sections which are detachably secured to the two adjacent supporting bows. Preferably, the supporting bows are curved and consist of a bow center section and two easily removable bow end sections.  The unique design, construction and interaction of the cover sections, the bow center sections and the bow ends enable damaged cover sections and bows to easily be removed and replaced without disassembling or removing the

2

cover system from its location.   <u>A drive assembly can be used to extend and retract the segmented cover system of the present invention</u>.

The BACKGROUND OF THE INVENTION describes the advance in the art as follows:

> The need for reliable covering systems and particularly a retractable covering system for truck and trailer bodies has long been recognized where the cargo being carried is perishable, a hazardous material, or which could be dangerous to passing motorists such as stones, gravel, asphalt, shale, or any other material which can become a projectile. Retractable covering systems have the advantage that they can be operated easily and safely from the ground by one person. They can also be extended and retracted in very little time thereby improving overall efficiency and reducing driver fatigue.

The issue presented in DeMonte's motion rests on whether the accused device has a "drive assembly" as required by the '109 patent.  THE SUMMARY OF THE INVENTION in the '109 patent describes the drive assembly as  follows:

> With the addition of a drive assembly and a frame, the cover assembly can be made retractable thereby expending its possible uses to almost any structure. For example, the present cover system could be used as an awning over a porch or patio, or as a cover for a swimming pool.  Preferably, however, the present invention is used as a cover system for large vehicles such as railroad cars and truck trailer bodies.
>
> ...
>
> The drive assembly can be used to extend and retract the segmented cover assembly consisting of the alternating cover sections and supporting bows.  Any number of known mechanical or electrical drive systems can be used. Preferably, the drive assembly comprises an endless cable and two pulleys on each side of the cover assembly with a pulley on each side connected together by a rod.  The last supporting bow (i.e. the one closest to the back of the frame or truck trailer is fixedly attached at each end thereof to the cable on each

3

side of the cover assembly so that as the cable moves it pulls the rest of the bows due to the interconnection of the cover sections and the bows. The drive assembly can be either manually operated or motor driven.

The principal claim of the '109 patent at issue is independent Claim 1, which reads as follows:

> 1. A retractable segmented cover system used with a truck trailer comprising:
>
> a plurality of flexible cover sections with a plurality of substantially parallel supporting bows spaced there between and
> a drive assembly, wherein each cover section is detachably connected between substantially parallel supporting bows, the bows are slideably supported on the truck trailer and at least one bow is fixedly connected to the drive assembly such that the cover system can be extended or retracted by the drive assembly and
> wherein a cover section can be removed from the cover system independent of the other cover sections.

### B. Claim Construction

On November 19, 2003, the Court held a Markman hearing to construe key terms in the '109 patent. The Decision on Claim Construction, states the following construction for the term drive assembly:

> The drive assembly is an assemblage of two or more parts that act together to impart motion to the flexible cover sections and substantially parallel supporting bows from an unspecified source

### IV. The Trial

The trial extended over five days.

### A. The Witnesses

Testifying at trial for Sundance were:

4

1. Vincent Merlot, a co-inventor of the '109 patent, described the development and production of the segmented cover system described in the patent. He also testified about prior art and the advantages associated with the patented system.

2. Ronald Bredemeyer, an expert witness

3. James Nanci, a co-inventor of the '109 patent, described the background of the invention and prior art.

Testifying at trial for DeMonte were:

1. Walter DeMonte, a fact witness, described the Quick Draw™ system

2. Daniel Bliss, an expert witness

## B. The Exhibits

The exhibits at trial included the patent in suit; file history and reexamination history of patent in suit; claim construction chart, brochures and advertisements of the Quick Draw™ system; brochures and advertisements of Sundance's Detroit Tarp; operator's manual for the Quick Draw™ system, technical drawings, photographs and examplars of the Quick Draw™ system.

## V. Jury Instructions

When a case is tried to a jury, the instructions state the law of the case. Recital of the instructions is helpful to know what the jury was told about the rules of law they were to apply to the facts as they found them. Here the jury was instructed consistent with the law. The relevant portions of the instructions follow:

[Plaintiff's Contentions]

I will first describe to you plaintiff's contentions. Plaintiffs contend that defendants has directly infringed claim 1 of the '109 patent. To prove direct infringement, plaintiff's must prove that it is more probable than not that defendants'

5

Quick Draw™ trailers contain each and every limitation of Claim 1.

[Construction of the Claims]

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the language of claim 1 means and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or note it is invalid.

I will now define the meaning of the words used in the patent claims at issue. You must use the definitions I provide to you in your consideration of the infringement and invalidity issues.

The phrase "used in a truck trailer" means "The retractable segmented cover systems is used with a trailer that is designed to be hauled by a truck."

The word "bows" means "members that are either curved or straight and have any cross-sectional shape."

The phrase "drive assembly" means "an assemblage of two or more parts that act together to impart motion to the flexible cover sections and substantially parallel supporting bows from an unspecified source."

The phrase "slideably supported on the truck trailer" means "the bows are adapted for smooth and continuous movement along a surface on the truck trailer, which supports the bows."

The phrase "fixedly connected to the drive assembly" means "fastened securely to the drive assembly."

The word "independent" means "any one cover section can be removed from the cover system without removing any other cover section."

[Infringement]

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells or offers to sell or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

Only the claims of a patent can be infringed. You must

6

compare claim 1, as I have defined it, to the accused products, and determine whether or not there is infringement.

You have heard testimony about embodiments. There are examples of how the patented invention may be made. You should not compare Defendant's Quick Draw™ product with any specific embodiment or example set out in the '109 patent. The only correct comparison is with the language of the claim itself, with the meaning of some terms that I have given to you.

You must consider each limitation of claim 1 of the '109 patent individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

Whether or not defendants knew that what they were doing was an infringement does not matter. A person may be found to be a direct infringer of a patent even if he or she believed in good faith that what he or she was doing was not an infringement of any patent, and even if they did not know of the patent.

It is your job to determine whether or not plaintiffs have proved by the more probable than not standard that defendant has infringed claim 1 of the '109 patent.

## VI.  Legal Standards

### A.  Judgment as a Matter of Law

Fed. R. Civ. P. 50 establishes the standard for DeMonte's motion.  It

provides:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable

7

finding on that issue.

Fed. R. Civ. P. 50(a)(1).  When a party makes a renewed motion after a verdict has

been returned, the court may: "(A) allow the judgment to stand, (B) order a new trial, or

(C) direct entry of judgment as a matter of law [.]"  Fed. R. Civ. P. 50(b)(1).  The inquiry

for resolving a Rule 50 motion is the same as the inquiry for resolving a motion for

summary judgment under Fed. R. Civ. P. 56.  White v. Burlington N. & Santa Fe. Ry.

Co., 364 F.3d 789, 794 (6th Cir. 2004) (en banc) (citing Reeves v. Sanderson Plumbing

Prods., Inc., 530 U.S. 133, 150 (2000)).[2]  Consequently, "[j]udgment as a matter of law

is appropriate when 'viewing the evidence in the light most favorable to the non-moving

party, there is no genuine issue of material fact for the jury, and reasonable minds could

come to but one conclusion in favor of the moving party.'" Tisdale v. Fed. Express

Corp., 415 F.3d 516, 527 (6th Cir. 2005) (internal quotation marks omitted).  See also

Johnson Controls v. Jay Ind., 459 F.3d 717 (6th 2006).

### B.  Infringement

An infringement analysis entails two steps.  See Markman v. Westview

Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995).  The first step is to determine the

meaning and scope of an allegedly infringed claim, and the second step is to properly

compare the claim to the accused device.  Id.  Further, there can be no infringement as

a matter of law if a claim limitation is missing from the accused device.  London v.

Carson Pirie Scott & Co., 946 F.2d 1534, 1538-39 (Fed. Cir. 1991).

---

2 Because a motion for judgment as a matter of law raises a procedural issue that is not
unique to patent law, the Court of Appeals for the Federal Circuit applies the law of the
"regional circuit in which the appeal from the district court would usually lie."  Summit
Tech. Inc. v. Nidek Co. ., 363 F.3d 1219, 1223 (Fed. Cir. 2004).  As such, the Court
cites to caselaw from the Sixth Circuit regarding a Rule 50 motion.

## VII.  Decision

### A.  Waiver of Right to Bring the Motion

#### 1.

Sundance first argues that DeMonte is precluded from bringing the motion because it did not move for judgment as a matter of law at the close of the proofs prior to submission of the case to the jury.  DeMonte admits it did not move for judgment as a matter of law, but argues that Sundance also did not make a proper motion for judgment as a matter of law regarding invalidity and that the Court permitted both parties, after the verdict was returned, to file whatever papers they wanted.

"It is well-settled that a court can only consider a motion for a judgment [as a matter of law] only if the moving party has previously made a motion [for a judgment as a matter of law] at the close of all the evidence."  United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc., 400 F.3d 428, 447 (6th Cir. 2005) (internal quotation marks and citation omitted).  The Court cannot consider the sufficiency of the evidence presented at trial to support the jury's verdict where a defendant has failed to move for a judgment as a matter of law in the district court.  See United States v. L.E. Cooke Co., 991 F.2d 336, 343 (6th Cir. 1993) (finding that the issue of the sufficiency of the evidence was properly raised in the district court before reviewing the same issue); Underwriters at Lloyd's London v. Sanders, No. 98-6722, 2000 U.S. App. Lexis 15947, at *6 (6th Cir. 2000) (finding that the court was precluded from considering the sufficiency of the evidence to support the jury verdict when the movant failed to renew the Rule 50 motion); Jackson v. Huron Dev. Ltd. P'ship, No. 98-2356, 2000 U.S.App. Lexis 4030 (6th Cir. 2000) (holding that a party who fails to move for judgment as a

9

matter of law at the close of the evidence forfeits the right to raise such a motion after

the verdict, that party is also precluded from raising the sufficiency of evidence on

appeal).

While the precedents suggest that the Court may not consider DeMonte's motion

made for the first time after the jury verdict and based on the sufficiency of the

evidence, the Court concludes for the reasons explained below, that consideration of

the motion is appropriate under the circumstances.

**2.**

DeMonte's contention that Sundance did not make a proper motion for judgment

as a matter of law is wrong.  The following exchange took place after the close of the

proofs and outside the presence of the jury:

| | |
|---|---|
| The Court: | Be seated.  Any matters for the Court? |
| DeMonte's counsel: | Oh, no, Your Honor. |
| Sundance's counsel: | Your Honor, at this time, we would move for a directed verdict as to Counterclaim 1, Counterclaim 2, and Counterclaim 3, which deal with the invalidity arguments, the invalidity based on insufficient evidence as a matter of law. |
| The Court: | Well, it's called a motion for judgment as a matter of law.  I will take it under advisement. |
| Sundance's counsel: | Thank you, Your Honor. |
| The Court: | I will not deprive the jury of the opportunity to express itself, although you should both be aware that I have said in the past that a jury verdict in a patent case is only a way station.  The Judge has an obligation to give meaningful consideration at any post trial motion if he feels that the jury has erred, and if you view my decision in [Vieau v. Jaypax], you will see illustrated what I've said. |

Trial Transcript, April 28, 2006 pp. 76-77.

Sundance did move for judgment as a matter of law.  The Court treated the

10

motion in a pre-emptory fashion because, as the Court stated, it was determined to have the case go to the jury and that it would give meaningful consideration to any arguments after the jury's verdict was rendered.  This is sufficient to satisfy the requirement of making a motion for judgment as a matter of law.  "[T]he courts take a practical view of what constitutes a motion at the close of the evidence.  Richard Givens, Manual of Federal Practice, 5th ed. § 7.51 (2005 supp).  See also <u>Karam v. Sagemark, Consulting, Inc.</u>, 383 F.3d 421, 426 (6th Cir. 2004) (when defendant stated intent to move for judgment as a matter of law at appropriate times, but district court ordered defendant to defer motions and expressly reserved all arguments, defendant had properly preserved right to move for judgment as a matter of law after verdict).

Given the time constraints in having a jury waiting to hear final argument followed by instructions so it can begin deliberations, the Court was not disposed to listen to a detailed argument when it knew it was going to take the motion under advisement.  This is a common practice.  As one commentator has said:

> Most courts will not rule on a motion under FRCP 50 until after submitting the case to a jury, subject to a later determination of the questions raised by the motion.  This avoids the risk of a second trial if the court of appeals holds contrary to the trial court as to the sufficiency of the evidence.

Givens, <u>supra</u>, § 7.51 (1998).

Given the Court's expressed preference to taking Sundance's motion for judgment as a matter of law under advisement and obtaining a verdict, it is likely based on the Court's comments that DeMonte was dissuaded from making a formal motion for judgment as a matter of law at the time, and instead decided it could make such a motion after the jury returned a verdict.

Despite DeMonte's failure to recite the magic words, to deny it the opportunity to

11

argue that the jury's infringement verdict was insufficient as a matter of law[3] would exalt form over substance.  This is particularly so since the Court is denying its motion,[4] thus there is no real harm.  Indeed, considering the motion ensures a complete record for review.

## A.  The Merits of the Motion

### 1.  Parties Arguments

#### a.  DeMonte

DeMonte, argues that the accused device, Quick Draw™, lacks the drive assembly as required by Claim 1.  DeMonte describes the Quick Draw™ system as a retractable segmented cover system that may be mounted to a trailer, which includes a plurality of flexible cover or tarp sections and a variety of structurally distinct bows that support the flexible cover and are arranged in a parallel configuration.  The system also includes a pair of spaced guide rails that are secured to the trailer and a variety of structurally distinct wheeled guide assemblies that engage with the guide rails to provide free rolling movement.  In general the wheeled guides are also operatively connected to support bows.  One way to achieve movement of the Quick Draw™ system is to have an operator grasp a portion of the flexible cover or a specific support bow and then walk along side the system until the cover has been pushed or pulled to the desired position.  DeMonte says that this system does not infringe because there is no structure,

---

[3]It is worth noting that DeMonte has not raised any errors with the trial, such as improper jury instructions or improper admission of evidence or expert testimony, as grounds for its motion.

[4]Had the Court been disposed to grant the motion and then withheld a decision in DeMonte's favor due to its failure to properly move, that would be another matter.

12

mechanism, or assembly between the operator's hand and the flexible cover or support bow.

DeMonte's argument rests on construction of the term drive assembly, which was found to include an assemblage of two or more parts that act together to impart motion to the flexible cover sections. DeMonte contends that in the Quick Draw™ system movement of the segmented cover sections is achieved directly from the human operator so the wheels and guide rails are only supplemental to the movement action and exist only to provide guidance and smooth rolling of the support bows. DeMonte further contends that without these supplemental components operation of the system would still be possible, although it would be more difficult and inefficient. Therefore, the argument rests on a purported failure on Sundance's part to identify or establish a specific drive assembly for the Quick Draw™ system that actually imparts motion to the flexible cover sections. DeMonte says that the purpose of the guided wheels are to receive motion from the human operator, the power source, through the flexible cover sections and reduce the friction.[5]

DeMonte further argues that because Sundance has failed to identify exactly what in the accused Quick Draw™ device forms the drive assembly, there is no way to restructure the device as to not infringe the '109 patent. The argument rests on the assertion that if either the wheels or the carriage were removed the system would still be operable even though it would be more difficult to extend or retract the cover.

---

[5]DeMonte also cites the Court's statement at the close of trial to further support the argument that the Quick Draw™ does not have a drive assembly. The Court's comment was not intended to be definitive. On review of the record, including the pro and con arguments on the motion for judgment as a matter of law, the tripartite scheme which the Court suggested the patent called for compared to the bipartite scheme the Court suggested was reflected in the Quick Draw™ system did not hold up.

13

**b. Sundance**

Sundance argues it established at trial that the carriages, which it defined as consisting of two or more parts that include at least two main wheels, a guide wheel, the body of the carrier and the tarp handle, form the drive assembly that imparts motion to the retractable cover sections.  Further, Sundance argues the distinction DeMonte attempts to draw between imparting motion and receiving motion adds an element to Claim 1 of the '109 patent that is neither explicitly or implicitly present.  Sundance says there is no requirement that the drive assembly form a linkage between an unspecified power source and the support bows.  In the alternative, Sundance says that if a person operating the Quick Draw™ device were to apply force to a leading bow to retract the cover than the requirement of this additional element would be meet.  Sundance further argues there is no requirement that the unspecified power source act directly on the drive assembly; rather, the only requirement is that the drive assembly impart motion to the cover sections using the unspecified power source.

Sundance also argues that the Quick Draw™ device could be restructured so that it does not infringe the '109 patent.   In order to do this, DeMonte needs to eliminate the drive assembly by removing all the carriages to which the support bows are attached.

**2.  Conclusion**

The Court's claim construction made it clear that the term drive assembly in the '109 patent refers to an assemblage of components that impart motion on a segmented cover system.  Moreover, the Court did not impute into the claim a requirement that the components of the drive assembly be directly powered by the unspecified power source

14

or that the power source associated with the drive assembly must be physically linked in any way, shape or form to the components. Rather, this Court recognized the ordinary meaning of drive, which Sundance offered as "a mechanism that imparts or transfers power to a machine or within a machine." Academic Press Dictionary of Science and Technology 684 (1992). Under the Court's claim construction, to constitute a drive assembly an assemblage of two or more parts, which are operated by an unspecified power source, must work together to cause the segmented cover sections to move.

In the Quick Draw™ system the components of the drive assembly can include the body of the carrier and the varies wheels located at the side of the trailer and the tracks supporting the bows that form the segmented cover sections.[6] These components are powered by a human operator, who can use a tarp handle to facilitate application of human power, to extend or retract the truck cover. Therefore, a reasonable jury could determine the Quick Draw™ system has a drive assembly, as required by claim 1.

The components recognized as the drive assembly of the Quick Draw™ system are not supplemental components that only receive motion from a human operator. Expert testimony at trial established that the Quick Draw™ system is unique because a human operator can extend and retract the cover by physically pushing or pulling.

---

[6]Merlot testified as follows:
> Q: Can you identify what that [drive assembly] is in the Quick Draw™ system?
> A: Yes, I would consider any carriage with wheels a drive assembly.
> Q: Carriage and wheels. Does this have carriage and wheels?
> A: Yes, it does.
> Q: And where are they located?
> A: They are located at the side of the [truck] trailer and the track supporting the bow.

Trial Testimony, April 24, 2006, p. 21, lines 4-8:

Moreover, the wheels and the corresponding tracks are key to this unique operation.

Sundance's expert, Bredemeyer, testimony at trial on cross examination clearly

established the significance of the components in question:

> Q:  So what's unique about the Quick Draw™ system over
> the Hall System [prior art]?
> A:  Well, what's unique is you can walk up to the corner of it
> and grab the handle and pull it, and the whole tarp system
> comes along and stays on the trailer and goes all the way to
> the front.
> Q:  What about it - - I understand that's how it works.  What
> about it specifically makes it work so well?
> A:  Well, the fact that the panels are all connected and you
> have a drive assembly; the wheels that keep - - for it to roll on
> as well as those underneath that keep it aligned so it will roll
> straight down the side of the trailer.

Trial Transcript, April 26,2006, pp.53-54, lines 13-24.

Sundance's expert, Merlot, further established on direct examination that based

on the weight of the Quick Draw™ system it would not be possible to move the cover

more than a few inches without use of the wheels.

> Q:  Mr. Merlot, did you hear the testimony this morning of Mr.
> Bliss [Defendant's expert witness] who indicated that if he
> took the wheels off of the DeMonte trailer you could still push
> it?
> A:  Yes, I did.
> Q:  Is that an accurate statement?
> A:  No, its not.
> Q:  What's wrong with that statement
> A:  The system weights approximately 1,800 pounds or so,
> and there's no way it could be moved more than six or eight
> inches, if that.
> Q:  Would it be your testimony that the wheels are required
> to move that?
> A:  The wheels would be required, yes.

Trial Transcript, April 28,2006, pp.72, lines 5-17.

The tracks on the body carrier and varies wheels that engage with the tracks are

16

essential to proper and effective operation of the Quick Draw™ system. Therefore, the components of its drive assembly are not supplemental to achieving movement of the segmented cover system.

A reasonable jury could determine that the Quick Draw™ system has a drive assembly, and as such, infringes the '109 patent. There is no requirement in the '109 patent or the Court's claim construction that the components of the drive assembly, which are connected to the support bows, must be linked to the unspecified power source to impart motion on the cover sections. Nor is there a requirement that the power source act directly upon the components of the drive assembly to cause movement of the cover sections.

DeMonte's second argument that it would be impossible to not infringe the '109 patent because a drive assembly has not been identified is a non-issue because this Court has clearly described that the components of the Quick Draw™ system can form the drive assembly.

Overall, the jury's finding that the patent was infringed is supported by the record. SO ORDERED.


          s/Avern Cohn_____
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated: April 25, 2007


I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, April 25, 2007, by electronic and/or ordinary mail.

17

_s/V. Sims for Julie Owens_____
Case Manager, (313) 234-5160